## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

HERLINDA RAMOS,
        Appellant,

      v.

DEPARTMENT OF HOMELAND
  SECURITY,
        Agency.

DOCKET NUMBER
AT-0752-13-0637-I-1

DATE: November 21, 2014

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Thomas Tierney, Norwalk, California, for the appellant.

Kaleb M. Kasperson, Miami, Florida, for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member
Vice Chairman Wagner issuing a separate, dissenting opinion.

### FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the agency action removing her for lack of candor. Generally, we grant petitions such as this one only when: the initial decision contains erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2        Effective May 13, 2013, the agency removed the appellant from her position as a GS-12 Deportation Officer with U.S. Immigration and Customs Enforcement (ICE) for two specifications of lack of candor occurring on:  (1) January 26, 2012, when the appellant provided inaccurate information to a highway patrol trooper during a traffic stop and detention[2]; and (2) February 29, 2012, when the appellant provided false information regarding the traffic incident to an Office of

---

[2] Specifically, the agency charged that the appellant told the patrol trooper that she was an ICE law enforcement officer actively involved in an official "fugitive operation" and that she was on her way from an ICE office in Lake City, Florida, where the agency had a "space" in a bank, to Gainesville to do a "drive by" to see if the fugitive was there, in addition to other inaccurate details regarding her role in the alleged fugitive operation. Initial Appeal File (IAF), Tab 5 at 3-4.  The proposal notice states that the appellant was not on official duty nor assigned to a fugitive team on that date and that ICE does not have an office in Lake City.  *Id.* at 4.

the Inspector General (OIG) investigator.[3]  Initial Appeal File (IAF), Tab 4 at 27-31 (decision letter), Tab 5 at 3-8 (proposal notice).

¶3    On June 12, 2013, the appellant filed an appeal of her removal to the Board, arguing that the disciplinary action was untimely and excessive in nature.  IAF, Tab 1.  She specifically declined her option for a hearing.  *Id.* at 2.  In a June 18, 2013 acknowledgment order, the administrative judge advised the appellant that she had 10 calendar days to file a written request for a hearing and, if she did not request a hearing in that time, she would waive her right to one.[4]  IAF, Tab 2 at 1. On July 9, 2013—8 days past the deadline—the appellant's newly retained attorney moved for a hearing "upon advice of counsel" and for a 30-day suspension of the case.  IAF, Tabs 8, 9.  The administrative judge denied the appellant's untimely request for a hearing but granted the 30-day suspension. IAF, Tab 12.  The appellant requested reconsideration of the hearing denial, which the administrative judge again denied.  IAF, Tab 14, Tab 18 at 1.

¶4    On September 13, 2013, the administrative judge issued a summary of the telephonic status conference and order regarding the issues on appeal.  IAF, Tab 19.  The order provided that the appellant did not dispute the lack of candor charge or the specifications and that the charged misconduct, by its nature, bore a nexus to the efficiency of the service.  *Id.* at 4.  As such, the only remaining issue to be adjudicated was the reasonableness of the penalty.  *Id.*  Later, the

---

[3] The agency alleged that, during her interview with the OIG investigator, the appellant denied telling the highway patrol trooper that she was on duty, on a fugitive operation team, or coming from an ICE office in Lake City.  IAF, Tab 5 at 4.  However, according to the proposal notice, the police officer's dashboard camera recorded the appellant saying that she was doing "fugitive operations"; that she was coming from Lake City, Florida, where the agency had an office in a bank; that she was with "Immigration" on her way to do a drive-by to see if the fugitive was there; and that there were marked units waiting for her in Gainesville.  *Id.*

[4] Pursuant to the Board's regulations regarding computation of time, 5 C.F.R. § 1201.23, the request for a hearing was due no later than Monday, July 1, 2013.

administrative judge issued a second order clarifying the law and elements of proof related to the appellant's disparate penalty claim. IAF, Tab 26.

¶5      In the appellant's close of record brief, she confirmed that she did not dispute the two specifications of lack of candor but argued that the penalty of removal was "beyond the tolerable limits of reasonableness" given her medical conditions and long history of employment with the agency without prior discipline. IAF, Tab 23 at 5. She stated that "numerous" other agency employees have been charged with "lack of candor," in addition to other sustained charges, but not removed. *Id.* at 5-8. In support, she submitted notices of proposed discipline and/or decision letters based on lack of candor charges for other ICE employees. *Id.* at 10-124; IAF, Tab 25. She also renewed her objection to the denial of her untimely request for a hearing. IAF, Tab 23 at 4.

¶6      The agency responded that the deciding official appropriately weighed all of the *Douglas*[5] factors in a conscientious manner and that the penalty of removal was appropriate given the "extremely serious" misconduct, especially in light of the appellant's position as a law enforcement officer. IAF, Tab 30 at 14-23. Further, the agency argued that the appellant had failed to show that any of her proposed comparators had engaged in substantially similar misconduct or that any of them were proper comparators under the applicable analysis. *Id.* at 25-33. The agency noted that it had provided a "plethora" of other cases where law enforcement officers were removed by the agency for the offense of lack of candor within the last 3 years, including one case with the same deciding official as in the appellant's case. *Id.* at 34.

¶7      The appellant replied that the agency's *Douglas* factor analysis was improper and requested that the administrative judge undertake an independent *Douglas* factor analysis. IAF, Tab 33 at 4-5.

---

[5] *See Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).

¶8    On January 14, 2014, the administrative judge affirmed the agency's removal action, finding that the appellant had failed to carry her burden to identify proper comparators and that the penalty of removal, while harsh, did not exceed the tolerable limits of reasonableness.  IAF, Tab 35, Initial Decision (ID).

## DISCUSSION OF ARGUMENTS ON REVIEW

¶9    The appellant timely petitioned for review of the initial decision on the grounds that the administrative judge abused his discretion by denying her untimely request for a hearing and erred by improperly limiting the pool of comparators.  Petition for Review (PFR) File, Tab 1 at 4-11.  The agency opposed the petition for review, arguing that the administrative judge did not abuse his discretion or commit legal error as the appellant claims, but, even if he did, any such error was harmless.  PFR File, Tab 3 at 8-26.  The appellant replied that the denial of her right to a hearing was not harmless.  PFR File, Tab 4 at 4-6.

The administrative judge did not abuse his discretion when he denied the appellant's untimely request for a hearing.

¶10    Failure to timely request a hearing will result in a waiver of that right when the appellant has not shown good cause for her failure.  *Spradlin v. Office of Personnel Management*, 84 M.S.P.R. 279, ¶ 11 (1999).  Here, the appellant did not request a hearing when she filed the appeal or timely request one pursuant to the June 18, 2013 acknowledgment order, which specifically informed her that she had 10 days to submit a written request for a hearing or she would waive her right to one.  IAF, Tab 2 at 1-2.  Nevertheless, the appellant did not request a hearing until 8 days past the deadline on July 9, 2013.  IAF, Tab 9.

¶11    To determine whether an appellant has shown good cause to waive the deadline for requesting a hearing, the Board will consider the same factors typically considered in connection with the waiver of the deadline for filing an appeal.  *Beaudette v. Department of Navy*, 5 M.S.P.R. 394, 397 (1981).  These factors include:  the length of the delay; whether the employee was notified of the

time limit or was otherwise aware of it; the existence of circumstances beyond the control of the employee that affected her ability to comply with the time limit; the degree to which negligence by the employee is shown to be present or absent; circumstances that show that any neglect involved is excusable; a showing of unavoidable casualty or misfortune; and the extent and nature of prejudice to the agency that would result from waiver of the time limit. *Id.* at 397-98; *Alonzo v. Department of the Air Force,* 4 M.S.P.R. 180, 184 (1980). The Board also should consider whether the time remaining, as of the date the request for a hearing was filed, reasonably permits the convening of a hearing and the rendering of a decision within 120 days from the date on which the appeal was filed. *Beaudette*, 5 M.S.P.R. at 398; *Webb v. U.S. Postal Service*, 3 M.S.P.R. 389, 393 (1980).

¶12        The appellant argued below that good cause existed to excuse the untimely filed request for a hearing based on her prior pro se status, lack of understanding of the importance of a hearing, the failure of the administrative judge to explain the importance of the right to testify and cross-examine adverse witnesses, the risk of "significant" prejudice to her case if she was denied a hearing, absence of prejudice to the agency, and the fact that there were 147 days left until the initial decision deadline as, at the time, case processing had been suspended for 30 days to allow the parties to conduct discovery. IAF, Tab 14 at 5-6. Further, she noted that she had requested a hearing within 1 business day of retaining counsel. *Id.* at 5. The administrative judge denied her request on the grounds that the appellant's prior pro se status and lack of understanding of the importance of requesting an evidentiary hearing did not constitute good cause for her untimely request. IAF, Tab 18 at 1.

¶13        On review, we discern no reason to disturb the administrative judge's denial of appellant's untimely hearing request. The appellant does not allege that she was unaware of her hearing right or that she was otherwise unable to understand and respond to the Board's acknowledgment order. *See Robinson v. Department of Army*, 50 M.S.P.R. 412, 417 (1991). The fact that she was pro se at the time of

the filing deadline does not constitute good cause; the Board has long held that a party's lack of legal counsel or inability to obtain legal counsel does not establish good cause for an untimely filing. *McCoy v. U.S. Postal Service*, 112 M.S.P.R. 256, ¶ 8 (2009), *aff'd*, 360 F. App'x 132 (Fed. Cir. 2010). Similarly, an appellant's inexperience with legal matters and unfamiliarity with Board procedures do not warrant waiver of the Board's deadlines. *See Brady v. Department of Labor*, 57 M.S.P.R. 341, 344 (1993), *aff'd*, 26 F.3d 138 (Fed. Cir. 1994) (Table). Although the 8-day delay was not particularly significant, we have consistently denied a waiver of a filing deadline if good cause for the delay is not shown, even where the delay is minimal and the appellant is pro se. *See, e.g.*, *Moorman v. Department of the Army*, 68 M.S.P.R. 60, 64 (1995) (declining to excuse a 3-day delay in filing an appeal where the appellant failed to establish good cause for the delay), *aff'd*, 79 F.3d 1167 (Fed. Cir. 1996) (Table). Further, prejudice to another party is only one factor to be considered in determining the existence of good cause and, in any event, will not be considered until the appellant establishes good cause for the untimely filing. *See Miller v. Department of Army*, 43 M.S.P.R. 228, 232 (1990). Likewise, the number of days remaining until the initial decision deadline is also only one factor to be considered and, moreover, does not establish good cause for an untimely filing. *See Beaudette*, 5 M.S.P.R. at 398; *see also Alonzo*, 4 M.S.P.R. at 184.

¶14      As such, the administrative judge did not abuse his discretion in denying the appellant's untimely request for a hearing.

The administrative judge did not commit reversible error in his disparate penalty analysis.

¶15      Where, as here, all of the agency's charges have been sustained, the Board will review an agency-imposed penalty only to determine if the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Davis v. U.S. Postal Service*, 120 M.S.P.R. 457, ¶ 6 (2013); *Douglas*, 5 M.S.P.R. at 306. In determining whether the selected

penalty is reasonable, the Board gives due deference to the agency's discretion in exercising its managerial function of maintaining employee discipline and efficiency. *Davis*, 120 M.S.P.R. 457, ¶ 6; *Douglas*, 5 M.S.P.R. at 306. The Board recognizes that its function is not to displace management's responsibility or to decide what penalty it would impose, but to assure that management judgment has been properly exercised and that the penalty selected by the agency does not exceed the maximum limits of reasonableness. *Davis*, 120 M.S.P.R. 457, ¶ 6; *Douglas*, 5 M.S.P.R. at 306. Thus, the Board will modify a penalty only when it finds that the agency failed to weigh the relevant factors or that the penalty the agency imposed clearly exceeded the bounds of reasonableness. *Davis*, 120 M.S.P.R. 457, ¶ 6; *Douglas*, 5 M.S.P.R. at 306. However, if the deciding official failed to appropriately consider the relevant factors, the Board need not defer to the agency's penalty determination. *Davis*, 120 M.S.P.R. 457, ¶ 6.

¶16 To determine the propriety of a penalty, the Board will consider factors such as the nature and seriousness of the offense, the employee's past disciplinary record, the supervisor's confidence in the employee's ability to perform her assigned duties, and the consistency of the penalty with the agency's table of penalties and with those imposed on other employees for the same or similar offenses. *Davis*, 120 M.S.P.R. 457, ¶ 7; *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 5 (2010); *Douglas*, 5 M.S.P.R. at 305-06. Not all of the factors will be pertinent in every case, and so the relevant factors must be balanced in each case to arrive at the appropriate penalty. *Davis*, 120 M.S.P.R. 457, ¶ 7; *Douglas*, 5 M.S.P.R. at 306. The seriousness of the misconduct is always one of the most important factors in assessing the reasonableness of an agency's penalty determination. *Davis*, 120 M.S.P.R. 457, ¶ 7.

¶17 As noted above, the appellant's principal argument is that the removal imposed on her was disparate compared to the penalties imposed on other ICE employees who were charged with lack of candor, but not removed. To establish

disparate penalties, the appellant must show that there is enough similarity between both the nature of the misconduct and other factors, such as whether the appellant and the comparator were in the same work unit, had the same supervisor and/or deciding official, and whether the events occurred relatively close in time, to lead a reasonable person to conclude that the agency treated similarly-situated employees differently. *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶ 20 (2012); *Lewis,* 113 M.S.P.R. 657, ¶ 15. The Board does not have hard and fast rules regarding the "outcome determinative" nature of these factors. *Lewis*, 113 M.S.P.R. 657, ¶¶ 12, 15. If an appellant makes this showing, the burden shifts to the agency to prove a legitimate reason for the difference in treatment by a preponderance of the evidence. *Villada v. U.S. Postal Service*, 115 M.S.P.R. 268, ¶ 10 (2010); *Lewis*, 113 M.S.P.R. 657, ¶ 6.

¶18     The administrative judge determined that the appellant failed to trigger the agency's burden to prove a legitimate reason for any alleged difference in treatment because she failed to make an initial showing that a similarly-situated employee was treated more favorably. ID at 5. Specifically, he found that none of the proposed comparator cases involved the same work unit, supervisors, degree of blatancy, or the same type of misconduct, which he characterized as making false or misleading statements to an outside law enforcement agency. ID at 4-5.

¶19     On review, the appellant argues that the administrative judge improperly limited the pool of comparators and characterized her misconduct in an "unduly narrow" manner. PFR File, Tab 1 at 7-8. We disagree. The administrative judge's characterization of the first charged misconduct—making false or misleading statements to an outside law enforcement agency—appears to be an accurate and reasonable statement of the appellant's misconduct.[6] Moreover,

---

[6] The administrative judge did not explicitly discuss the appellant's second sustained charge of lack of candor in the disparate penalty analysis. Such omission, however, does not affect the outcome of the analysis.

contrary to the appellant's argument, the administrative judge did not violate the Board's decision in *Villada*, by treating a comparator's geographic location as a dispositive factor; he explicitly considered several factors, including the nature of the misconduct and the degree of blatancy, as well as "geographic" factors such as the proposed comparators' work unit and chain of command. ID at 4-5.

¶20    In support of her disparate penalty claim, the appellant argues that other employees in similar positions were charged with lack of candor, in addition to other charges, but were not removed. PFR File, Tab 1 at 7-11. It is well-settled, however, that the similarity of comparative employees in a disparate treatment case is governed by the nature of their conduct and related circumstances, not by the label the agency ascribes to the misconduct. *Chavez v. Small Business Administration*, 121 M.S.P.R. 168, ¶ 19 (2014) (considering the specific nature of the misconduct when analyzing a disparate penalty claim); *see also Spahn v. Department of Justice*, 93 M.S.P.R. 195, ¶ 14 (2003) (concerning disparate penalty analysis under Title VII discrimination law). Here, the extent of the appellant's similarly-situated analysis consists of pointing out that the proposed comparators were agency law enforcement officers charged with lack of candor, as well as one or more other charges. PFR File, Tab 1 at 7-11. The appellant has neither alleged, nor conducted a factual analysis to show, that her misconduct is substantially similar to the misconduct underlying the lack of candor charges levied against her proposed comparators. Accordingly, she has not established that the proposed comparators engaged in substantially similar misconduct. *See id*. Moreover, upon independent review of the underlying misconduct engaged in by the proposed comparators apparently identified by the appellant, we find that none engaged in misconduct substantially similar to hers.

¶21     Although lacking in specificity, the appellant refers to 11 proposed comparator employees in her petition for review.[7]  PFR File, Tab 1 at 9-10.  Five of the proposed comparators obtained penalties less than removal as the result of settlement agreements with the agency, IAF, Tab 23 at 10-20, 21-41, 42-56, 79-92, Tab 25 at 4-13, and thus are not valid comparator employees.  *See Davis*, 120 M.S.P.R. 457, ¶ 10 (where another employee receives a lesser penalty, despite apparent similarities in circumstances, as the result of a settlement agreement, the agency will not be required to explain the difference in treatment); *Portner v. Department of Justice*, 119 M.S.P.R. 365 ¶ 20 n.4 (2013) (same).  Five other purported comparators engaged in a lack of candor to an agency supervisor, investigator, or the agency's Office of Professional Responsibility (OPR) during an inquiry into other misconduct.  IAF, Tab 23 at 57-66, 118-26[8], Tab 25 at 14-21, 23-28, 30-37.    Unlike the appellant, however, none of those employees lacked candor by attempting to mislead a state law enforcement officer about off-duty misconduct to avoid the consequences of unlawful activity.  *See id.*  For example, in a case from Newark, New Jersey, a deportation officer was suspended for 30 days based on the charge of misuse of a government vehicle for driving with his girlfriend and her niece, in the vehicle without authorization and two specifications of lack of candor based on his subsequent denial of the underlying

---

[7] The appellant does not specifically identify each proposed comparator or cite directly to the corresponding record evidence in her petition for review.  *See* PFR File, Tab 1 at 9-10.  We have reviewed the record and believe that we have correlated each proposed comparator mentioned by the appellant with his or her corresponding notice of proposed discipline and, if provided, decision letter.  *See* IAF, Tab 23 at 10-20, 21-41, 42-56, 57-62, 79-92, 106-15, 118-26, Tab 25 at 4-13, 14-22, 23-29, 30-37.

[8] The appellant, citing to pages "ASP 175-183," states that this proposed comparator was a supervisory law enforcement officer (LEO) charged with lack of candor and "numerous" other charges, but was only subject to a proposed 30-day suspension.  PFR File, Tab 1 at 10.  In fact, the proposal notice at "ASP 175-183" proposes a demotion, not a 30-day suspension.  IAF, Tab 23 at 118-26.  The appellant did not provide the agency's decision letter on this proposed discipline, thus we cannot determine what charges, if any, were sustained by the deciding official and what penalty, if any, was imposed.  *See id.*

misconduct to his supervisor and OPR. IAF, Tab 23 at 57-66. In another case from San Antonio, Texas, an Immigration Enforcement Agent (IEA) was suspended for 20 days (with 10 days held in abeyance) based on the charge of inattention to duty when he failed to respond to a call for assistance and three specifications of lack of candor when he repeatedly provided inaccurate information during an agency inquiry into the incident.[9] IAF, Tab 25 at 14-21.

¶22        The final proposed comparator identified by the appellant on review is another IEA from Texas who was suspended for 3 days based on the charges of conduct unbecoming and lack of candor. IAF, Tab 23 at 106-115. The factual background of the charges was that, while on duty and at a Texas State correctional facility, the IEA sought to meet with an inmate—who happened to be his cousin—and then denied knowing the inmate in two memoranda on the incident and when questioned by the agency investigator. *Id.* at 106-07. The deciding official upheld the single specification of conduct unbecoming and one specification of lack of candor. *Id*. at 113. As in the appellant's case, this purported comparator's misconduct involved misleading statements to an outside law enforcement organization and subsequent lack of candor regarding those statements to an internal investigator. However, the primary misconduct in the IEA's case does not involve the charge of lack of candor and, unlike the appellant, the IEA did not attempt to leverage his official position and misrepresent his duty status to avoid legal liability for his actions.[10]

---

[9] The decision notice in this matter was issued on July 29, 2009, nearly 4 years before the action against the appellant. The Board has held that the passage of a significant amount of time lessens the relevancy of comparator evidence. *See Chavez*, 121 M.S.P.R. 168, ¶ 23 (2014) (finding that a 2-year gap is "significant" and "undermines any disparate penalty showing the appellant could otherwise make").

[10] Even if the appellant was similarly situated to the IEA, we find that the difference in treatment is supported by legitimate reasons. For example, the IEA took responsibility for his actions, expressed remorse, and apologized for his misconduct. IAF, Tab 23 at 113. On the other hand, the appellant did not accept responsibility for her actions; instead, she argued that the traffic stop was unlawful/unwarranted and that the

¶23        In light of the above, we agree with the administrative judge that the appellant failed to show sufficient similarity between her case and those of her purported comparators so as to lead a reasonable person to conclude that the agency treated similarly-situated employees differently.  Accordingly, the appellant did not demonstrate that the penalty imposed upon her was inconsistent with penalties imposed upon other employees for the same or similar offenses.

¶24        Moreover, we agree with the administrative judge that the deciding official appropriately considered the *Douglas* factors, including the nature and seriousness of the offense in light of the appellant's position as a law enforcement officer, the supervisor's loss of confidence in the appellant's ability to do her assigned duties, and the fact that her misconduct would leave her *Giglio*-impaired[11].  *See* ID at 5-6.  The appellant's argument that her misconduct has "nothing if little to do with her ability to do her job," PFR File, Tab 1 at 8-9, is unpersuasive.  As explained by the deciding official, the appellant's attempt to leverage her official position to avoid possible legal liability implicates the core components of her position as a law enforcement officer and undermines the public's trust.  *See* IAF, Tab 4 at 27-28, Tab 30 at 39.  Accordingly, we find no reason to disturb the administrative judge's holding that the agency-imposed penalty does not exceed the tolerable limits of reasonableness.

---

"enormous amount of stress" she was undergoing at the time must have caused her to make the "erroneous statements" to the patrol trooper.  IAF, Tab 4 at 44-46.

[11] Under *Giglio v. United States*, [405 U.S. 150](#) (1972), investigative agencies must turn over to prosecutors, as early as possible in a case, potential impeachment evidence with respect to the agents involved in the case.  A "*Giglio*-impaired" agent is one against whom there is potential impeachment evidence that would render the agent's testimony of marginal value in a case, which means, of course, that a case that depends primarily on the testimony of a *Giglio*-impaired witness is at risk.  *See Hathaway v. Department of Justice*, [384 F.3d 1342](#), 1349 (Fed. Cir. 2004).

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address: United States Court of Appeals for the Federal Circuit 717 Madison Place, N.W. Washington, DC 20439.

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court.  The Merit Systems

Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                 _____
                                               William D. Spencer
                                               Clerk of the Board

Washington, D.C.

in

*Herlinda Ramos v. Department of Homeland Security*

MSPB Docket No. AT-0752-13-0637-I-1

¶1    I respectfully dissent.  First, because I believe that the administrative judge failed to consider the relevant factors in deciding whether good cause existed for waiving the deadline for requesting a hearing in this case, I would grant the appellant's petition for review and remand this case for further adjudication, including a hearing and for reconsideration of the merits of the appeal in light of any additional evidence adduced.

¶2    The Board's policy is to apply its rules in a manner that expedites the processing of each case, but with due regard for the rights of all the parties. 5 C.F.R. § 1201.11.  It is also the Board's policy that initial decisions in all appeals under 5 U.S.C. § 7701 will be issued within 120 days of the filing of the appeal.  *Glover v. Office of Personnel Management*, 9 M.S.P.R. 177, 179 (1981); *Gipson v. Veterans Administration*, 1 M.S.P.R. 435, 436 (1980).  In deciding whether good cause exists for waiving the deadline for requesting a hearing, the Board has therefore instructed that the administrative judge should consider whether there is time remaining, after the request is filed, to reasonably permit the arrangement of a hearing and the issuance of the initial decision before the 120-day time limit expires.  *Glover*, 9 M.S.P.R. at 179; *see Webb v. U.S. Postal Service*, 3 M.S.P.R. 389, 393 (1980).

¶3    In this case, the appellant, proceeding pro se, filed her appeal but did not submit a request for a hearing within the deadline established by the administrative judge.  Initial Appeal File (IAF), Tab 1.  However, she thereafter acquired counsel, who immediately moved for a hearing and a 30-day suspension of the case processing to allow for discovery.  *Id.*, Tabs 8-9.  The request for a hearing was made only 13 days after the request deadline set forth in the

administrative judge's order.  *Id.,* Tab 8.  The administrative judge denied the hearing request, but granted the suspension.  *Id.*, Tab 12.  At the time of the appellant's request for a hearing, there were 91 days left until the deadline for the issuance of the initial decision.  Thus, there was plainly time remaining, after the appellant filed the request, to reasonably permit the arrangement of a hearing and the issuance of the initial decision before the 120-day time limit expired.

¶4        Another factor to be considered in deciding whether good cause exists for waiving the deadline for requesting a hearing is the degree to which the agency would be prejudiced as a result of a waiver of the time limit for filing a hearing request.  *Glover*, 8 M.S.P.R. at 179 (citing *Alonzo v. Department of the Air Force*, 4 M.S.P.R. 180, 184-85 (1980)).  Here, the agency failed to show that granting the hearing would prejudice it in any manner.

¶5        The agency nonetheless contends on review that the denial was harmless because, given the appellant's concessions as to the merits of the specifications, the only issue before the Board was the reasonableness of the penalty and that the only relevant witness would have been the deciding official, who the appellant could have, but did not, depose.  These contentions are irrelevant to the question of whether good cause exists for waiving the deadline for requesting a hearing.  Moreover, as discussed below, I believe that this case should be remanded for further development of the record on the reasonableness of the penalty, including providing the appellant an opportunity to cross-examine the deciding official as to similarly-situated employees who were treated more leniently and also to testify on her own behalf.  In light of the above, even under a deferential standard, I believe that the administrative judge should have waived the deadline for filing and granted the request for a hearing and that this appeal should be remanded for a hearing on the merits.  *See Glover*, 8 M.S.P.R. at 179.

¶6        Second, for the reasons set forth in my separate opinion in *McNab v. Department of the Army*, 121 M.S.P.R. 661 (2014), I also dissent from the majority's analysis of the disparate penalties issue and its determination that the

penalty of removal was within the tolerable limits of reasonableness. I would, instead, remand this appeal for further adjudication to allow the Board to determine those issues on the basis of a fully-developed record, as is required by *Williams v. Social Security Administration*, 586 F.3d 1365, 1368 (Fed. Cir. 2009).

¶7        One of the grounds upon which the appellant challenged the penalty of removal as unreasonable was that the agency had imposed a more severe penalty on her than it had imposed upon other employees for the same or similar offenses. The majority finds that the administrative judge's characterization of the charge—making false or misleading statements to an outside law enforcement agency—is an accurate and reasonable statement of the appellant's misconduct. Majority Op., ¶ 18. It also acknowledges that the appellant identified, among others, a comparator whose misconduct involved misleading statements to an outside law enforcement organization and subsequent lack of candor regarding those statements to an internal investigator. *Id.*, ¶ 21. It nonetheless inexplicably concludes that the appellant failed to show sufficient similarity between her case and those of her purported comparators as to lead a reasonable person to conclude that the agency treated similarly-situated employees differently.

¶8        Thus, rather than remanding for further development of the record, the majority instead affirms the administrative judge's determination that the appellant has not met *her* burden of demonstrating that the penalty imposed upon her was inconsistent with penalties imposed on other employees for the same or similar offenses, and that she therefore failed to trigger the agency's burden to prove a legitimate reason for any alleged difference in treatment. *Id.*, ¶¶ 16-17, 22. The majority's analysis and conclusions cannot be reconciled with U.S. Court of Appeals for the Federal Circuit or Board precedent, which places the evidentiary burden on this issue upon the agency, not the appellant, and which requires that such determinations be based on evidence contained in a fully-developed record, rather than on mere speculation.

¶9        A disparate penalties argument is not an affirmative defense.  5 U.S.C. § 7701(c)(1); *Chavez v. Small Business Administration*, 121 M.S.P.R. 168, ¶ 9 (2014); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 307-08 (1981) (the agency bears the burden of proving the appropriateness of the penalty).  Although the appellant must raise the disparate penalties issue, the agency bears the evidentiary burden on the matter.  *Miille v. Department of the Air Force*, 28 M.S.P.R. 248, 251 (1985); *Bivens v. Tennessee Valley Authority*, 8 M.S.P.R. 458, 463 (1981); *Woody v. General Services Administration*, 6 M.S.P.R. 486, 488 (1981).  To "trigger" the agency's evidentiary burden on disparate penalties, the appellant must show that there is enough similarity between both the nature of the misconduct and other factors, such as whether the appellant and the comparator were in the same work unit, had the same supervisor and/or deciding official, and whether the events occurred relatively close in time, to lead a reasonable person to conclude that the agency treated similarly-situated employees differently. *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶ 20 & n.4 (2012); *Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶¶ 12, 15 (2010).  I believe that the appellant's evidence clearly triggered the agency's burden in this case.

¶10       The majority's conclusion that the appellant failed to demonstrate that the penalty imposed upon her was inconsistent with penalties imposed on other employees for the same or similar offenses turns longstanding Board precedent on its head, transforming an appellant's obligation to raise the disparate penalties issue into an evidentiary burden of proof on the matter.  This is especially inappropriate when the issue is the consistency of the penalty because it is the agency, not the appellant, that possesses information concerning comparator employees.

¶11       In the absence of any agency reason for the difference in treatment, the majority offers its own.  Majority Op., ¶¶ 20-21.  Speculation as to why the agency might have imposed different penalties, however, is no substitute for record evidence.  *Cf. Williams*, 586 F.3d at 1369 ("We decide cases on the record

before us, not on the basis of facts stated by counsel. The record before the Board, which is the only record we have, does not establish government counsel's factual description of what occurred, and we cannot base our decision on those statements.").

¶12    As in *McNab*, I neither express nor intimate any views as to what would be an appropriate resolution of this case, but only my view that the appropriate disposition of this case is to remand it to the administrative judge for further proceedings.    *See McNab*, 121 M.S.P.R. 661, ¶ 9 (Vice Chairman Wagner dissenting).  On remand, the administrative judge should: (1) develop, as fully as possible, the facts relating to whether the agency conscientiously considered the consistency of the penalty here with those imposed upon other employees for the same or similar offenses; (2) make findings and conclusions on that issue; and (3) based on that augmented record and those findings and conclusions, redetermine whether the agency met its burden to establish the appropriateness of the penalty in this case.  *Id.*  Under similar circumstances, the Board in *Voss v. U.S. Postal Service*, 119 M.S.P.R. 324 (2013), recently remanded an appeal for the administrative judge to reconsider the reasonableness of the penalty in light of the appellant's claim of disparate penalties, with instructions to allow the parties to submit supplemental evidence and argument, including a hearing, if requested, so that the administrative judge could analyze the appellant's claim based on a fully-developed record.  I believe that the Board should take the same approach in this case.

¶13    Accordingly, I respectfully dissent from the majority's decision to not remand this appeal for further adjudication, including a hearing and for reconsideration of the merits of the appeal in light of any additional evidence adduced, and for further development of the record on disparate penalties and

reconsideration of whether the agency-imposed penalty is entitled to deference as an exercise of management discretion within tolerable limits of reasonableness.


_____
Anne M. Wagner
Vice Chairman